IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | |
|---|---|
| LAKKY PHOSY #461438, | ) |
| Plaintiff, | ) |
| v. | ) NO. 1:22-cv-0006 |
| | ) JUDGE CAMPBELL |
| DR. [F/N/U] TUCKER, et al., | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

Plaintiff Lakky Phosy, an inmate at Turney Center Industrial Complex (TCIX) in Only, Tennessee, filed a pro se civil rights complaint under 42 U.S.C. § 1983 and an application to proceed as a pauper. The Court granted Plaintiff pauper status, screened the Complaint, and determined that the Plaintiff's claims for constitutionally inadequate medical care appeared to be untimely. (Doc. No. 7 at 2–5). Rather than dismiss the case, the Court gave Plaintiff an opportunity to file an Amended Complaint. (*Id.* at 5–6). Plaintiff then filed two motions for leave to amend, both accompanied by an Amended Complaint. The second motion requests that the Court accept its attached Amended Complaint in lieu of the pleading attached to the first motion. (Doc. No. 9 at 2). The second motion (Doc. No. 9) is **GRANTED**, and the Clerk is **DIRECTED** to enter its attached Amended Complaint (Doc. No. 9-2) as a separate docket entry. The first motion (Doc. No. 8) is **DENIED** as moot. For the following reasons, this action may proceed for further development.

### I. INIITAL REVIEW

The Court must conduct an initial review and determine if the Amended Complaint is frivolous or malicious, fails to state a claim, or seeks monetary relief against a defendant who is

immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b); 42 U.S.C. § 1997e(c). The Court also must liberally construe pro se pleadings and hold them to "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

**A. Factual Allegations**

The following summary of factual allegations is based on a liberal construction of the Amended Complaint and its exhibits, including documentation related to grievances Plaintiff submitted in September and December 2021. (Doc. No. 9-2 at 4, 8 (incorporating attached grievances)); *see Arauz v. Bell*, 307 F. App'x 923, 925 n.1 (6th Cir. 2009) (noting that a court may "consider materials attached to the complaint" in conducting an initial review under the Prison Litigation Reform Act).

Plaintiff was prescribed gabapentin for diabetic nerve pain from 2010 until October 2020, when TCIX Dr. Cortez Tucker discontinued the prescription. (Doc. No. 9-2 at 4). Discontinuing gabapentin caused Plaintiff "excruciating pain," which caused him to lose sleep and develop abnormal eating habits, which in turn caused his A1C levels to rise. (*Id.* at 5). According to the CDC, higher A1C levels are linked to diabetes complications. *See* https://www.cdc.gov/diabetes/ managing/managing-blood-sugar/a1c.html (last visited Apr. 29, 2022).

Plaintiff has received "no medication or treatment" for his diabetic nerve pain since the discontinuation of gabapentin in October 2020. (Doc. No. 9-2 at 21). Specifically, on August 16, 2021, Dr. Tucker saw Plaintiff for a "chronic care visit" and declined to renew the prescription until Plaintiff got "his diabetes under control." (*Id.* at 15). Plaintiff filed a grievance regarding this issue in September 2021. (*Id.* at 17–18). After that, Plaintiff continued to receive no treatment for

2

his diabetic nerve pain, so he filed another grievance in December 2021. (*Id.* at 7, 20–21). He also submitted sick call requests in December 2021 and February 2022, to no avail. (*Id.* at 5, 12).

Plaintiff believes that Dr. Tucker discontinued the gabapentin prescription at the direction of Centurion Medical of Tennessee, Dr. Tucker's employer and the private entity contracted to provide medical services at TCIX, in order to increase Centurion's profits. (*Id.* at 2, 4). Plaintiff also believes that Kevin Rea, a Health Services Administrator with the Tennessee Department of Correction (TDOC), "is working in concert with Dr. Tucker and Centurion as a cost saving[] measure for TDOC." (*Id.* at 4). Plaintiff sues Dr. Tucker, Kevin Rea, and Centurion, seeking monetary damages and injunctive relief. (*Id.* at 5).

**B. Standard of Review**

To determine if a prisoner states a claim for the purpose of initial review, the Court applies the same standard as under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). The Court therefore accepts "all well-pleaded allegations in the complaint as true, [and] 'consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009)). An assumption of truth does not extend to legal conclusions or "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).

**C. Discussion**

Plaintiff brings this action under 42 U.S.C. § 1983[1] against Dr. Tucker and Kevin Rea in their individual and official capacities, as well as Centurion. "There are two elements to a § 1983

---

[1] Plaintiff also cites 42 U.S.C. § 1985 (Doc. No. 9-2 at 3), but the potentially relevant portion of Section 1985 requires allegations of a conspiracy to discriminate based on race or other class-based animus. *See Fox v. Mich. State Police Dep't*, 173 F. App'x 372, 376 (6th Cir. 2006) (explaining that the portion of Section 1985 pertaining to conspiracies to "deprive persons of their equal protections rights" requires

3

claim. First, a plaintiff must allege that a defendant acted under color of state law. Second, a plaintiff must allege that the defendant's conduct deprived the plaintiff of rights secured under federal law." *Handy-Clay v. City of Memphis, Tenn.*, 695 F.3d 531, 539 (6th Cir. 2012) (citations omitted).

### 1. Individual-Capacity Claims

The Eighth Amendment "is violated when prison doctors or officials are deliberately indifferent to [a] prisoner's serious medical needs." *Richmond v. Huq*, 885 F.3d 928, 937 (6th Cir. 2018) (quoting *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001)). "A constitutional claim for deliberate indifference contains both an objective and a subjective component. The objective component requires a plaintiff to show the existence of a 'sufficiently serious' medical need." *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 550 (6th Cir. 2009) (quoting *Farmer*, 511 U.S. at 834). "The subjective component, in contrast, requires a plaintiff to 'allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk.'" *Id.* (quoting *Comstock*, 273 F.3d at 703).

Accepting Plaintiff's allegations as true, Plaintiff satisfies the objective component of this claim by alleging that he suffers from "excruciating" diabetic nerve pain that impedes his ability to sleep and eat properly. Additionally, drawing all reasonable inferences in his favor, Plaintiff satisfies the subjective component as to Dr. Tucker, but not Kevin Rea.

---

allegations of "some racial, or perhaps otherwise class-based, invidiously discriminatory animus") (quoting *Kush v. Rutledge*, 460 U.S. 719, 726 (1983)). Those allegations are not present here, so Plaintiff fails to state a claim under Section 1985.

Plaintiff alleges that he has complained of his condition several times, including during a visit with Dr. Tucker in August 2021,[2] and that he has nonetheless received no medication or treatment for his diabetic nerve pain. Plaintiff thus plausibly alleges that Dr. Tucker was aware of and deliberately disregarded his serious medical need. Accordingly, Plaintiff states a claim for deliberate indifference to serious medical needs against Dr. Tucker.

As to Rea, however, Plaintiff does not allege any personal knowledge of Plaintiff's condition. *See Winkler v. Madison Cnty.*, 893 F.3d 877, 891 (6th Cir. 2018) ("[T]he subjective component of a deliberate indifference claim must be addressed for each officer individually.") (quoting *Phillips v. Roane Cnty., Tenn.*, 534 F.3d 531, 542 (6th Cir. 2008)). And to the extent that Plaintiff is attempting to impose personal liability on Rea as a supervisor, Plaintiff must allege that Rea "either encouraged the specific incident of misconduct or in some other way directly participated in it." *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009) (quoting *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)). Plaintiff makes no such allegations. Accordingly, Plaintiff fails to state a claim against Rea in his individual capacity.

2. Official-Capacity Claims

Turning to Plaintiff's claims against Centurion and the individual Defendants in their official capacities, "individuals sued in their official capacities stand in the shoes of the entity they represent." *Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). Dr. Tucker thus represents his employer Centurion, and Rea represents the TDOC.

---

[2] In its prior Order, the Court advised Plaintiff that this action appeared to be facially untimely and could not proceed "unless the Amended Complaint identifies one or more specific instances of refusing medical care that occurred on or after January 20, 2021." (Doc. No. 7 at 5). By identifying this alleged denial of medical treatment in August 2021, Plaintiff has satisfied the Court's Order and the case is no longer facially untimely.

To state a Section 1983 claim against a private entity like Centurion or a governmental entity like TDOC, Plaintiff must allege that the entity had a policy or custom that directly caused him to suffer a constitutional violation. *Savoie v. Martin*, 673 F.3d 488, 494 (6th Cir. 2012) (private entity) (citing *Miller v. Sanilac Cnty.*, 606 F.3d 240, 255 (6th Cir. 2010)); *Hardrick v. City of Detroit, Mich.*, 876 F.3d 238, 243 (6th Cir. 2017) (governmental entity) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–92 (1978)). Moreover, each entity can only be liable for a policy or custom "*of that [entity]*, rather than a policy or custom of" another. *See Johnson v. Karnes*, 398 F.3d 868, 877 (6th Cir. 2005) (noting the distinction between a policy or custom of a municipality, and a policy or custom of a private contractor) (citations omitted). Liberally construing the Amended Complaint, Plaintiff satisfies this requirement as to Centurion, but not TDOC.

Plaintiff alleges that Dr. Tucker has not renewed his gabapentin prescription to save Centurion money, which the Court construes as an allegation that Centurion has a policy or custom of denying necessary medical treatment for monetary reasons. Plaintiff has also adequately alleged, for the purpose of initial review, that that this policy or custom caused the constitutional deprivation alleged in the Amended Complaint. The Court therefore concludes that Plaintiff states an arguably non-frivolous claim for denial of adequate medical care against Centurion. And because Centurion itself is named as a Defendant, the Court will dismiss Plaintiff's official-capacity claim against Dr. Tucker as redundant. *See Jackson v. Shelby Cnty. Gov't*, No. 07-6356, 2008 WL 4915434, at *2 (6th Cir. Nov. 10, 2008) (affirming dismissal of redundant official-capacity claims).

Plaintiff also a makes a conclusory allegation that Rea "is working in concert with Dr. Tucker and Centurion as a cost saving[] measure for TDOC." But Plaintiff does not provide any factual support for this allegation, such as how Rea is involved in the treatment decisions of

6

Centurion or Centurion employees. Therefore, this is a "'naked assertion' devoid of 'further factual enhancement,'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557), and it is not entitled to a presumption of truth. And there are no other allegations from which the Court can reasonably infer a policy or custom attributable to TDOC. Accordingly, Plaintiff fails to state an official-capacity claim against Rea.

### III. Request for a TRO

In the Amended Complaint, Plaintiff requests "temporary injunctive relief to reinstate his prescription so as to alleviate his pain and suffering during the pendency of these proceedings." (Doc. No. 9-2 at 5). To the extent that this may be construed as a request for a temporary restraining order (TRO), that request will be denied. Rule 65(b) allows the Court to grant a TRO "only if specific facts . . . clearly show that immediate and irreparable injury, loss or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A). In deciding whether to grant a TRO, the Court considers: (1) whether the party seeking the TRO has a strong likelihood of success on the merits; (2) whether the moving party will suffer irreparable injury if the TRO is not entered; (3) the potential harm the TRO would cause others; and (4) whether the public interest would be served by issuance of the TRO. *Ne. Ohio Coal. for Homeless & Serv. Emps. Int'l Union, Local 1199 v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006) (citations omitted).

Before the Court reaches the merits, however, a TRO movant must comply with specific procedural requirements. First, this Court's local rules require any request for a TRO to "be made by written motion separate from the complaint commencing the case." M.D. Tenn. L.R. 65.01(a). Second, because the movant bears the burden of justifying preliminary injunctive relief on the merits, *Kentucky v. U.S. ex rel. Hagel*, 759 F.3d 588, 600 (6th Cir. 2014), a TRO motion must be

accompanied by a memorandum of law. M.D. Tenn. L.R. 65.01(b). Third, a TRO motion must be supported, at a minimum, by "an affidavit or a verified complaint." Fed. R. Civ. P. 65(b)(1)(A); M.D. Tenn. L.R. 65.01(b). Fourth, a TRO movant must give notice to opposing parties or certify in writing "any efforts made to give notice and why it should not be required." Fed. R. Civ. P. 65(b)(1)(B). The Court mandates "strict compliance" by pro se parties with this notice provision to avoid the potential unfairness of ruling against parties without notice. M.D. Tenn. L.R. 65.01(c).

Plaintiff satisfies none of these requirements. There is no TRO motion separate from the Amended Complaint. Plaintiff's request is not supported by a memorandum of law, nor is it accompanied by a signed affidavit or verified complaint. There is no indication that Plaintiff served or attempted service of Defendants, and Plaintiff does not attempt to explain any efforts he made to give notice to Defendants or why notice should not be required. Plaintiff, accordingly, has not complied with the mandatory procedures for consideration of a request for injunctive relief on the merits. Therefore, his request for a TRO will be **DENIED** without prejudice to Plaintiff later filing a properly-supported, procedurally-complaint Rule 65 motion for injunctive relief.

### IV. Conclusion and Instructions to Plaintiff

For these reasons, the Court concludes that Plaintiff states colorable claims for deliberate indifference to serious medical needs against Dr. Tucker in his individual capacity and against Centurion. Plaintiff's official-capacity claims against Dr. Tucker are **DISMISSED**, and Kevin Rea is **DISMISSED** as a party. Plaintiff's request for a TRO is **DENIED** without prejudice.

The Court's determination that the Amended Complaint states a colorable claim for purposes of this initial screening does not preclude the Court from dismissing any claim at any time for the reasons set forth in 28 U.S.C. § 1915(e)(2), nor does it preclude any Defendant from filing a Motion to Dismiss any claim under Federal Rule of Civil Procedure 12.

The Clerk is **DIRECTED** to send Plaintiff two service packets (a blank summons and USM 285 form). Plaintiff **MUST** complete a service packet for each remaining Defendant—Dr. Cortez Tucker and Centurion Medical of Tennessee—and return each completed service packet to the Clerk's Office within **30 DAYS** of the date this Order is entered on the docket.[3] Upon return of the completed service packets, **PROCESS SHALL ISSUE**.

Plaintiff is warned that failure to return completed service packets by the deadline could lead to dismissal of this action, but he may request additional time for complying with this Order, if necessary. Plaintiff also must keep the Clerk's Office informed of his current address at all times.

This action is **REFERRED** to the Magistrate Judge to oversee service of process, enter a scheduling order for the management of the case, dispose or recommend disposition of any pretrial motions under 28 U.S.C. §§ 636(b)(1)(A) and (B), and conduct further proceedings, if necessary, under Rule 72 of the Federal Rules of Civil Procedure and the Local Rules of Court.

It is so **ORDERED**.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE

---

[3] The Court has moved. To file in person or by mail, the new address is: U.S. District Court for the Middle District of Tennessee, 719 Church Street, Nashville, TN 37203. For more information, visit the Court's website (www.tnmd.uscourts.gov).